IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NVR, INC.,

    *Plaintiff*,

v.

                                  Civil Action No. ELH-14-241

HARRY A. POOLE, SR.
CONTRACTOR, INC. *et al.*,

    *Defendants*.

## MEMORANDUM OPINION

This suit arises out of a contractual dispute relating to the construction of Eden Brook, an

age-restricted (55+) residential condominium located in Odenton, Maryland (the

"Condominium"). NVR, Inc. ("NVR"), plaintiff, was the developer of the Condominium, which

consists of more than 200 units in multiple buildings.[1] NVR hired various contractors, including

defendants Harry A. Poole, Sr. Contractor, Inc. ("Poole"); ESN Construction, Inc. ("ESN"); and

Plus One Masonry Company, Inc. ("Plus One"), to carry out various phases of the construction.[2]

Of particular relevance here, on or about August 18, 2003, NVR entered into an

---

[1] There is some confusion as to the precise number of buildings that make up Eden Brook. In its Amended Complaint, NVR indicates that there are fourteen buildings. ECF 45 ¶ 7. However, Exhibit 1 to NVR's Complaint is a copy of a suit filed in State court, discussed *infra*, which claims that the community consists of "eight (8) buildings (with 14 separate and distinct addresses)." ECF 1-1 ¶ 1. This discrepancy is not material.

[2] Plaintiff alleges subject matter jurisdiction on the basis of diversity of citizenship. *See* ECF 1 ¶ 5; 28 U.S.C. § 1332(a)(1). Specifically, NVR is a corporation organized under the laws of Virginia, with its principal place of business in Reston, Virginia. ECF 1 ¶ 1. Poole is a corporation organized under the laws of Maryland, with its principal place of business in Union Bridge, Maryland. *Id.* ¶ 2. ESN is a corporation organized under the laws of Maryland, with its principal place of business in Odenton, Maryland. *Id.* ¶ 4. And, Plus One is a corporation organized under the laws of Maryland, with its principal place of business in Landover, Maryland. *Id.* ¶ 3.

agreement (ECF 10-4, the "Contract") with Poole for the installation of brick masonry veneer for thirteen of the fourteen buildings of the Condominium.  ECF 45 ¶ 9; *see* ECF 10-4, Contract. NVR also entered into contracts with ESN and Plus One to perform rough framing work and additional installation of brick masonry veneer.  ECF 45 ¶¶ 10-11.

In January 2014, plaintiff filed suit against defendants (ECF 1, the "Original Complaint" or "Complaint") alleging, *inter alia*, negligent construction.  *See id.*  The Original Complaint contained three claims: Breach of Contract (Count I); Express Indemnity (Count II); and Indemnity Implied by Law (Count III).  *Id.* ¶¶ 33-47.[3]  It was supported by two exhibits: the complaint filed in the Circuit Court for Anne Arundel County, Maryland, captioned *Eden Brook Condominium, Inc. v. NVR, Inc. et al.*, Case 02-C-11-158348 (ECF 1-1, the "Eden Brook Complaint"); and the Verdict Sheet issued by the jury in that case (ECF 1-2, the "Verdict Sheet").[4]  NVR amended its Original Complaint to add a claim for Contribution (Count IV) against defendants Poole, ESN, and Plus One.  ECF 45 (the "Amended Complaint").  The Amended Complaint is the operative pleading.

ESN filed a Third-Party Complaint against H&S Construction and Framing, Inc. ("H&S") for Breach of Contract, Express Indemnity, Indemnity Implied by Law, and Contribution.  ECF 8.  And, Poole filed a Third-Party Complaint (ECF 40) against J C & Gonzalez Masonry, Inc., Jose J Gonzalez individually, and Jose J. Gonzalez as Trustee of the Assets of Johan & Gonzalez Masonry Inc. (a forfeited corporation) (collectively "Gonzalez"), for

---

[3] In response, Poole filed a Motion to Dismiss or, in the Alternative, Motion for More Definite Statement.  *See* ECF 10.  I denied that motion.  *See* ECF 36 (Memorandum); ECF 37 (Order).

[4] These documents are not attached to NVR's Amended Complaint (ECF 45), but they remain a part of the record in this case.  The Eden Brook Complaint is relevant because NVR's claims against defendants are rooted in that litigation.

Indemnification and Contribution.  Gonzalez filed a Cross Claim against Poole, ESN, Plus One, and H&S for Indemnification and Contribution.  ECF 54.

A settlement was reached between NVR, Plus One, ESN, and H&S.  They filed a "Stipulation Of Dismissal With Prejudice Of Certain Claims Involving NVR, Plus One, ESN, and H&S."  (ECF 88, "Stipulation").  Pursuant to the Stipulation, all of the claims brought by NVR against Plus One, ESN, and H&S have been dismissed, and ESN's claims against H&S were also dismissed.  *See* ECF 89 (Order approving Stipulation).  Consequently, ESN withdrew its pending motions.  ECF 86; 87.

Claims involving NVR, Poole, and Gonzalez are at issue.  Now pending is Poole's Motion to Dismiss or, in the Alternative, Motion for More Definite Statement (ECF 56, the "Motion"), supported by a memorandum (ECF 56-1) (collectively, the "Motion").  NVR opposes the Motion (ECF 70, the "Opposition") and Poole has replied (ECF 83, the "Reply").[5]

The Motion has been fully briefed, and no hearing is necessary to resolve it.  *See* Local Rule 105.6.  For the reasons that follow, I will deny the Motion.

## FACTUAL BACKGROUND[6]

Eden Brook Condominium, Inc. (the "Association") hired NVR to develop the Condominium.  ECF 45 ¶ 8.  In turn, NVR hired various contractors, including defendants Poole, ESN, and Plus One, to construct multiple buildings and common elements of the Condominium.

---

[5] Poole's Reply consists of three paragraphs.  With respect to Counts I, II, and III of the Amended Complaint, the Reply incorporates by reference Poole's reply (ECF 29) in support of its initial motion to dismiss the Complaint (ECF 10).  As to Count IV, Poole incorporates arguments made in a reply filed by co-defendant ESN (ECF 82, "ESN Reply").  The ESN Reply, however, was submitted in connection with a summary judgment motion, and this Motion is not for summary judgment.  Nevertheless, I have considered the ESN Reply.

[6] Unless otherwise noted, the facts are drawn from NVR's Amended Complaint.

*Id.* Built between 2005 and 2008, the Condominium consists of 224 residential units occupying fourteen buildings in Odenton, Maryland. *Id.* ¶ 7. The Condominium was designed as an age-restricted community and its Association is a membership consisting of the 224 unit owners. *Id.*

Of relevance here, NVR entered into a contract with Poole to install brick masonry veneer at thirteen of the fourteen Condominium addresses.[7] *Id.* ¶ 9. That work included the installation of the brick exterior facade according to the applicable plans and project specifications provided by NVR. *Id.* Poole was also responsible for supervising the work of its subcontractors. *Id.* ¶ 13.

Sometime between 2008 and 2011, alleged defects as to the framing and masonry work were discovered at the Condominium structures. *See id.* ¶¶ 15-16, 25.[8] Among the issues reported were incomplete installation of cavity and window flashings[9] and improper installation of underlayments[10] beneath brick siding, allowing water to penetrate into the interior of Condominium units. *Id.* ¶ 23.

In January 2011, the Association brought suit against NVR in the Circuit Court for Anne

---

[7] NVR states that Poole was hired "in connection with the construction of thirteen *buildings* at the Condominium . . .," and NVR lists the thirteen postal addresses at which Poole's construction is alleged to have occurred. ECF 45 ¶ 9 (emphasis added).

[8] The Amended Complaint does not provide specific dates as to when the defects were first discovered. Rather, it alleges that construction concluded in 2008, *id.* ¶ 15, and that the Eden Brook Complaint was filed in 2011. *Id.* ¶ 16.

[9] Flashing products are a common form of weatherproofing typically used to cover seams around the installation site of doors and windows. Modern flashing is usually a type of impermeable adhesive that is bonded to the seam to prevent the seepage of water. *See* definition of flashing in Merriam-Webster.com, http://www.merriam-webster.com/dictionary/flashing (last visited March 11, 2015).

[10] Underlayment is a general term for a weatherproofing material used to waterproof external structures such as siding, veneer, and facades. *See* definition of underlay in Merriam-Webster.com, http://www.merriam-webster.com/dictionary/underlay (last visited March 11, 2015).

Arundel County, Maryland, on behalf of itself and "individual unit owners,"[11] captioned *Eden Brook Condominium, Inc. v. NVR, Inc. et al.*, Case 02-C-11-158348.  ECF 45 ¶ 16; *see* ECF 1-1, Eden Brook Complaint.  The Eden Brook Complaint consisted of eight claims: Negligent Construction (Count I); Breach of Title 10 Implied Warranties (Md. Code, Real Property Article § 10) (Count II); Negligent Misrepresentation (Count III); Violation of the Maryland Consumer Protection Act (Count IV); Breach of Express Warranty (Count V); Breach of Title 11 Implied Warranties (Md. Code, Real Property Article § 11) (Count VI); Negligent Repair (Count VII); and Breach of Contract (Count VIII).  ECF 1-1 ¶¶ 27-81.  The Association sought to recover damages for alleged defective construction of the Condominium.  ECF 1-1, Eden Brook Complaint, ¶¶ 16-17.

The State case proceeded to a jury trial in October 2012.  ECF 45 ¶ 20.[12]  Evidence was presented as to the defective construction of the Condominium.  *Id.* ¶¶ 21-24.  In its suit here, NVR asserts, in part, *id.* ¶¶ 20-24 (emphasis omitted):

> 20 . . . The largest component of the Condominium Association's damage claim involved the removal and replacement of the veneer of all fourteen buildings which it claimed was necessary as a result of the damage caused by the defective work performed by Poole, Plus One and ESN. . . .

> 21 . . . The Condominium Association's expert witnesses provided testimony and opinions concerning the improper masonry and framing work at the Condominium that allegedly violated the Construction Documents, applicable building codes, manufacturers' instructions, industry standards and/or the applicable standard of care . . . .

> 22 . . . [T]he Condominium Association's experts testified at length concerning claimed deficiencies and resulting damages involving, among other

---

[11] NVR did not identify those owners.  ECF 45 ¶ 16.

[12] Count VII, for Negligent Repair, was not submitted to the State jury.  ECF 1-2 at 12, Eden Brook Verdict Sheet.

things, a) weep holes improperly located below grade[13]; b) the lack of end dams; c) failure to properly shingle the underlayment; d) improper brick flashing that does not extend far enough to the face of the brick; e) unprotected steel that corroded; f) incomplete underlayment that exposed the wood sheathing/framing; g) deflected lintels; and h) improper use/installation of brick ties.

23 . . . [W]ith respect to the framing work, the Condominium Association's experts testified at length concerning claimed deficiencies and resulting damages involving, among other things, a) improper window installation; b) use of improper flashing materials; c) lack of window caulk/sealant; d) improper flashing of underlayment; and e) improper installation of house wrap.

24 . . . The Condominium Association offered into evidence field inspection notes, reports and photographs showing, among other things, alleged damage to interior finishes (*e.g.*, wood rot, damaged window frames and mold) and damage to exterior finishes (*e.g.*, rotted and wet sheathing, framing, and resulting interior damage) which resulted from the work performed by Poole, Plus One, and ESN.

On November 19, 2012, the jury returned a verdict against NVR, awarding the Association $5,629,715.00.  *See* ECF 1-2 at 2, Eden Brook Jury Verdict.  Of that sum, the jury appears to have attributed $4,032,837.00 to defective installation of brick work.[14]  *See id.*  Thereafter, NVR "paid an amount to the Condominium Association in satisfaction of the money judgment."  ECF 45 ¶ 28.

This suit followed.  As indicated, NVR alleges, *inter alia*, that Poole was negligent in constructing the Condominium and thus NVR is entitled to damages from Poole.

Additional facts are included in the discussion.

---

[13] A weep hole is an opening in a wall or foundation designed to allow drainage of water. *See* definition of weep hole, Merriam-Webster.com, http://www.merriam-webster.com/dictionary/weep%20hole (last visited March 11, 2015).

[14] According to the Eden Brook Verdict Sheet, ECF 1-2 at 2, the jury attributed $4,032,837.00 in damages to "Bricks." *Id.*

## I.  Standard of Review

### A.  Rule 12(b)(6)

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the adequacy of a complaint.  To survive a Rule 12(b)(6) motion, a complaint must satisfy the pleading standard articulated in Fed. R. Civ. P. 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of the rule is to provide the defendant with "fair notice" of the claim and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 & n. 3 (2007).  That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted); *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).

To defeat a motion under Rule 12(b)(6), a complaint "must plead facts sufficient to show that [the] claim has substantive plausibility."  *Johnson v. City of Shelby, Miss.*, ____ U.S. ____, 135 S. Ct. 346, 347 (2014); *see Iqbal*, 556 U.S. at 684 ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . .") (citation omitted); *Twombly*, 550 U.S. at 570; *see also Epps v. JP Morgan Chase Bank, N.A.*, 675 F.3d 315, 320 (4th Cir. 2012); *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011).  If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown that "'the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (citation omitted).

In reviewing a Rule 12(b)(6) motion, a court "'must accept as true all of the factual allegations contained in the complaint,'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir.

2011), *cert. denied*, _____ U.S. _____, 132 S. Ct. 402 (2011).   The complaint must contain sufficient factual detail to "nudge[ ] [the plaintiff's] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 680.

Dismissal "is inappropriate unless, accepting as true the well-pled facts in the complaint and viewing them in the light most favorable to the plaintiff, the plaintiff is unable to 'state a claim to relief . . . .'" *Brockington v. Boykins*, 637 F.3d 503, 505-06 (4th Cir. 2011) (citation omitted).   But, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events.   *See Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). Nor must it accept legal conclusions couched as factual allegations, *Iqbal*, 556 U.S. at 678, or legal conclusions drawn from the facts.   *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Monroe v. City of Charlottesville*, 579 F.3d 380, 385-86 (4th Cir. 2009), *cert. denied*, 559 U.S. 992 (2010).

In regard to a Rule 12(b)(6) motion, courts generally do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses" through a Rule 12(b)(6) motion. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).   However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009).   Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'"   *Goodman*, 494 F.3d at 464 (quoting *Richmond*, 4 F.3d at 250) (emphasis added

in *Goodman*).

In evaluating the sufficiency of a complaint in connection with a Rule 12(b)(6) motion, a court ordinarily "may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013); *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, a court may properly consider documents incorporated into the complaint or attached to the motion to dismiss, "'so long as they are integral to the complaint and authentic.'" *U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (quoting *Philips v. Pitt Cty Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *see Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir.), *cert. denied*, 543 U.S. 979 (2004). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original).

Additionally, facts and documents subject to judicial notice may be considered by a court, without converting the motion under Rule 12 to one for summary judgment. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499 (2007); *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir.), *cert. denied*, ____ U.S. ____, 132 S. Ct. 115 (2011). Therefore, I may take judicial notice of relevant pleadings filed in a State court action. *See Colonial Ins. Co. v. Coil*, 887 F.3d 1236, 1239 (4th Cir. 1989).

As indicated, plaintiff attached two documents to its initial Complaint. In particular, plaintiff has attached as exhibits the Eden Brook Complaint (ECF 1-1) filed by the Association

against NVR in the Circuit Court for Anne Arundel County, and Eden Brook Verdict Sheet (ECF 1-2) detailing NVR's liability to the Association. Because plaintiff incorporated these documents into the original Complaint and they are integral to it, and because Poole does not contest their authenticity, I will consider them in ruling on the Motion.

## B. Choice of Law

The parties seem to disagree about whether Maryland or Virginia law governs the contribution claim (Count IV). The Court has not had occasion to resolve the choice-of-law issue. For present purposes, however, it is sufficient that the laws concerning contribution are virtually identical in Maryland and Virginia. *Compare* Va. Code Ann. § 8.01-35.1 with Md. Code (2013 Repl. Vol.), Cts. & Jud. Proceedings Art. ("C.J."), § 3-1402(c).

A federal court sitting in diversity must apply the law of the state in which the court is located, including the forum state's choice-of-law rules, unless a compelling federal interest directs otherwise. *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 696 (D. Md. 2011) ("When choosing the applicable state substantive law while exercising diversity or supplemental jurisdiction, a federal district court applies the choice of law rules of the forum state."). *See also Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007); *Baker v. Antwerpen Motorcars, Ltd.*, 807 F. Supp. 2d 386, 389 n. 13 (D. Md. 2011). Maryland is, of course, the forum state. As to contract claims, Maryland applies the law of the state in which the contract was formed (*"lex loci contractus"*), unless the parties to the contract agreed to be bound by the law of another state. *See, e.g., Am. Motorists Ins. Co. v. ARTRA Group, Inc.*, 338 Md. 560, 573, 659 A.2d 1295, 1301 (1995); *TIG Ins. Co. v. Monongahela Power Co.*, 209 Md. App. 146, 161, 58 A.3d 497, 507 (2012), *aff'd*, 437 Md. 372, 86 A.3d 1245 (2014).

Under Maryland's choice-of-law principles for tort claims, Maryland applies the doctrine of *lex loci delicti*, *i.e.*, the law of the jurisdiction where the alleged wrong occurred. *Lewis v. Waletzky*, 422 Md. 647, 657, 31 A.3d 123, 129 (2011); *Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 620, 925 A.2d 636, 648 (2007); *Kortobi v. Kass*, 182 Md. App. 424, 443, 957 A.2d 1128, 1139 (2008), *aff'd*, 410 Md. 168, 978 A.2d 247 (2009).

Concerning choice of law, the NVR Master Contractor Agreement with Poole, ECF 10-4, states: "This Agreement shall be governed by and construed in accordance with the domestic laws of the Commonwealth of Virginia without giving effect to any choice or conflict of law provision or rule (whether of the Commonwealth of Virginia or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the Commonwealth of Virginia."

Poole and the Association are both Maryland corporations, and injury was allegedly caused by negligence in Maryland.  Because the Contract contains a Virginia choice-of-law provision, however, Virginia law appears to govern plaintiff's contract-based claims.  *See* ECF 10-4 at 4, Contract.  Thus, Poole relies on a Virginia statute and Virginia case law in its Motion challenging the contribution claim.  *See, e.g.,* ECF 56 ¶ 4.  In contrast, NVR argues Maryland tort law governs its contribution claim, although NVR addresses both Maryland and Virginia law in its Opposition.  ECF 70 at 5.    It is not entirely clear that the extra-contractual, equitable remedy of contribution is subject to the choice of law provision in the Contract.

In any event, the law is virtually identical for present purposes.  In the absence of a conflict in law identified by the parties, I decline to undertake a choice-of-law analysis at this juncture.  *Cleaning Authority, Inc. v. Neubert*, 739 F. Supp. 2d 807, 820 (D. Md. 2010) ("'Choice-of-law analysis becomes necessary . . . only if the relevant laws of the different states

lead to different outcomes.'") (citation omitted); *see Ohio Sav. Bank v. Progressive Cas. Ins. Co.*, 521 F.3d 960, 962 (8th Cir. 2008) ("Like the district court, we will ignore what might be a complex choice of law analysis because the parties have not identified a relevant state law conflict.").

## II. Discussion

### A. Counts I-III

As noted, Poole previously moved to dismiss Counts I-III.  *See* ECF 10.  I denied that Motion.  ECF 36; ECF 37.  Poole has renewed its challenge to those counts with respect to the Amended Complaint, to avoid a claim of waiver.  Poole asserts: "Defendant Poole previously moved to dismiss the initial Complaint, and also sought a more definite statement.  That Motion was denied by Order of May 28[,] 2014.  Defendant, perhaps in an over-abundance of caution renewed its challenge to the Second Amended Complaint, so as to avoid any potential non-preservation issues."  ECF 56 at 1 n. 1.

For the reasons I previously stated (ECF 36), Poole's Motion (ECF 56) will be denied as to Counts I, II, and III.

### B. Poole's Motion to Dismiss Count IV: Contribution

In seeking dismissal of the contribution claim, Poole argues: "Nowhere in the Amended Complaint is it alleged that Plaintiff and this Defendant shared a common liability to the tort suit plaintiff [*i.e.*, the Association], nor that any potential liability of Defendant to the tort suit plaintiff has been released by the tort suit plaintiff."  ECF 56, ¶ 2.  In Poole's view, NVR's failure to allege facts that the Association could have sued Poole directly defeats any claim for contribution.

In its Opposition, ECF 70, NVR asserts that an inference of joint liability to the tort-suit

plaintiff can be drawn from its allegations of Poole's defective workmanship and its allegations that it and Poole are joint tortfeasors for the damages arising out of those defects. *Id.* at 5. And, NVR contends that, as a procedural matter, NVR was not required to plead affirmatively that NVR's settlement with the Association released Poole from all potential liability. *Id.* at 6.

"When two or more persons are or may be liable for the same harm and one of them discharges the liability of another by settlement or discharge of judgment, the person discharging the liability is entitled to recover contribution from the other, unless the other previously had a valid settlement and release from the plaintiff." Restatement (Third) of Torts § 23 (1991). Essentially, "contribution is the distribution of loss among culpable parties in accordance with their proportionate shares. It is defined as 'a payment made by each, or by any, or several having a common interest of liability of his share in the loss suffered, or in the money necessarily paid by one of the parties in behalf of the others.'" *Hartford Acc. & Indem. Co. v. Scarlett Harbor Assoc. Ltd. P'ship*, 109 Md. App. 217, 280, 674 A.2d 106, 137 (1996) (citation omitted), *aff'd*, 346 Md. 122, 695 A.2d 153 (1997). The doctrine is not based on contract or tort. Rather, it is based on principles of equity. *Lyon v. Campbell*, 324 Md. 178, 182, 596 A.2d 1012, 1014 (1991). But, contribution is not limited to tort cases; it may be applied to joint contractual obligations. *See, e.g., Jackson v. Cupples*, 239 Md. 637, 639-40, 212 A.2d 273, 274 (1965).

There are two prerequisites to contribution. First, the parties must share a common liability or burden. Second, the party seeking contribution must have paid, under legal compulsion, more than his fair share of the common obligation. *See Heritage Harbour, L.L.C., et al., v. John J. Reynolds, Inc., et al.*, 143 Md. App. 698, 714, 795 A.2d 806, 815 (2002). Both Maryland and Virginia have enacted a statutory right to contribution. *See* C.J. § 3-1402; Va. Code Ann. § 8.01-34 (West 2007).

Parties share a common liability if they are co-obligors or joint tortfeasors. *Hartford Acc. & Indem. Co.*, 109 Md. App. at 281, 674 A.2d at 137 (1996). Parties are co-obligors if they are jointly liable or jointly and severally liable on an obligation. *Id.*; *see also Lyon*, *supra*, 324 Md. 178, 596 A.2d 1012. They are not co-obligors, however, if they are only severally liable on the obligation. *Hartford Acc. & Indem. Co.*, 109 Md. App. at 281, 674 A.2d at 137.

Under C.J. § 3-1401(c), joint tortfeasors "means two or more persons jointly or severally liable in tort for the same injury to persons or property, whether or not judgment has been recovered against all or some of them." The law is to the same effect in Virginia. S*ee Fairfax Hosp. Sys., Inc. v. Nevitt*, 249 Va. 591, 599, 457 S.E.2d 10, 14 (1995) (stating that joint tortfeasors are persons "mutually liable for the same injury."). Therefore, parties share a common liability if they are "either (1) jointly liable on the same non-tort obligation (such as a contract, promissory note, or tax), or (2) jointly or severally liable, or both, in tort, for the same harm." *Hartford Acc. & Indem. Co.*, 109 Md. App. at 281, 674 A.2d at 137.

Under C.J. § 3-1402(b), "[a] joint tort-feasor is not entitled to a money judgment for contribution until the joint tort-feasor has by payment discharged the common liability or has paid more than a pro rata share of the common liability." And, under C.J. § 3-1402(c), if a joint tort-feasor settles with an injured person, the tort-feasor "is not entitled to recover contribution from another joint tort-feasor whose liability to the injured person is not extinguished by the settlement." *See also* Va. Code Ann. § 8.01-35.1(B) (West 2007).

In this case, NVR alleges that it and Poole are joint tortfeasors with respect to the defective installation of the brick masonry veneer at issue in the Eden Brook litigation. ECF 45, ¶¶ 22, 49. In NVR's view, it is jointly and severally liable with Poole for the tort of negligence arising out of that harm. *Id.* ¶ 47. By adding a claim of contribution, NVR asserts, at least

implicitly, that the Association could have sued Poole, individually or jointly with NVR, for the damages caused by the defectively installed brick veneer. *See* ECF 45 ¶ 49.  In other words, NVR claims that Poole could have been found directly liable to the Association in the same or a substantially related lawsuit.  And, because NVR ultimately paid damages awarded to the Association, *id.* ¶ 50, NVR now seeks from Poole contribution toward the judgment obtained against NVR, under a theory that Poole could have been sued directly by the Association for the same damages. *See id.* ¶ 52.

In construction cases, courts have historically been reluctant to extend direct liability between property owners and contractors who are not in privity of contract. *Council of Co-Owners Atlantis Condo., Inc. v. Whiting-Turner Contracting Co.*, 308 Md. 18, 27, 517 A.2d 336, 341 (1986) (citing *Prosser and Keeton on the Law of Torts* § 93, at 667-68 (5th ed. 1984)); *see also Pulte Home Corp. v. Parex, Inc.*, 174 Md. App. 681, 735-36, 923 A.2d 971, 1002 (2007), *aff'd*, 403 Md. 367, 942 A.2d 722 (2008).  "[T]he first obstacle that arises is the fact that there has been no direct transaction between the [owner] and the [contractor], which usually is expressed by saying that they are not in 'privity' of contract." *Whiting-Turner Contracting Co.*, 308 Md. at 27, 517 A.2d at 341.  However, there has been movement from this rigid application of privity.

In *Pulte Home Corp.*, 174 Md. App. at 735-736, 923 A.2d at 1002 the Maryland Court of Special Appeals said:

> . . . The requirement of privity of contract has been abandoned as a basis for recovery by third parties for physical harm to themselves and tangible things against those who negligently supply, repair, or construct things so as to leave them in an unreasonably dangerous condition.  Moreover, strict liability has been extended to those who sell or lease houses with defects of a kind that subject users and others to an unreasonable risk of harm.  Such strict liability has not, however, been extended generally against contractors who build houses on land owned by others and who repair products or buildings pursuant to contracts made with the

owner or possessor of things.

(citing *Prosser & Keeton on the Law of Torts* § 93, at 667-68 (5th ed. 1984) (footnotes omitted)).

Under the economic loss rule, both Maryland and Virginia have held that a contractor may be directly liable to a property owner, even where there is no contractual privity between them, but only under certain circumstances.  *See Pacific Indem. Co. v. Whaley*, 560 F. Supp. 2d 425 (D. Md. 2008) (applying Maryland law) (concluding that a subcontractor may be liable to a contractor for contribution if the contractor can prove they are joint tortfeasors.); *Whiting-Turner Contracting Co.*, 308 Md. at 27, 517 A.2d at 341 ("The requirement of privity of contract has been abandoned as a basis for recovery by third parties for physical harm to themselves and tangible things against those who negligently supply, repair, or construct things so as to leave them in an unreasonably dangerous condition."); *Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.*, 236 Va. 419, 374 S.E. 2d 55 (1988) (explaining that, under Virginia law, a party not in privity may sue a contractor or other party for negligence if more than only economic losses are sought); *Kohl's Dep't Stores, Inc., v. Target Stores, Inc.*, 214 F.R.D. 406 (E.D. Va. 2003) (following *Sensenbrenner*).

In particular, under the economic loss rule, applicable in both Maryland and Virginia, *Pulte Home Corp.*, 174 Md. App. at 736, 923 A.2d at 736, a plaintiff in a construction case "may recover, from a defendant with which it is not in privity of contract, damages for injuries to person or property, but not purely economic damages."  *Id*. at 736-737, 923 A.2d at 1002; *see Sensenbrenner*, 236 Va. at 425, 374 S.E. 2d at 58; *see also Whiting-Turner Contracting Co.*, 308 Md. at 33, 517 A.2d at 344; *see also Kohl's Dep't Stores, Inc.*, 214 F.R.D. at 415.  The purpose of this rule is to limit contracting parties' exposure so that their liability for economic loss is fixed by the terms of the contract.  *See Pulte Home Corp.*, 174 Md. App. at 736, 923 A.2d at

736; *see also Whiting-Turner Contracting Co.*, 308 Md. 18, 517 A.2d 336.

Thus, in claims where there is no contractual privity, a contractor is liable only if the work performed poses an unreasonably dangerous condition to persons or because the work damaged property beyond the product itself. *See Sensenbrenner*, 236 Va. at 425, 374 S.E. 2d at 58; *Whiting-Turner Contracting Co.*, 308 Md. at 33, 517 A.2d at 344. Accordingly, when there is no contractual privity, tort damages are limited to non-economic damages. For example, the economic loss doctrine would limit to contractual remedies (*e.g.*, breach of contract, indemnification) damages arising out of repairs to negligently installed insulation. *Cf. United States Gypsum Co. v. Mayor and City Council of Baltimore*, 336 Md. 145, 647 A.2d 405 (1992) (recovery in tort appropriate where the material used was asbestos and therefore created a substantial risk of death or personal injury).

For purposes of a Rule 12(b)(6) motion, the court must assume the truth of the factual allegations contained in the complaint. *E.I. du Pont de Nemours & Co.*, 637 F.3d at 440; *Kendall*, 650 F.3d at 522. Thus, to sustain its contribution claim, NVR need only plead facts sufficient to support an allegation that NVR and Poole are joint tortfeasors—that Poole could have been sued directly by the Association—and non-economic losses were caused by Poole's alleged negligence. NVR has done so.

In its Amended Complaint, NVR refers to and quotes from allegations contained in the Eden Brook Complaint, ECF 45, ¶ 17 (quoting ECF 1-1, ¶ 20):

> The Condominium Association alleged that the Condominium buildings contain various construction defects that caused property damage and/or unsafe conditions, including "water damage and flooding within units; water leaks at windows, walls and roofs; premature deterioration; structural instability; premature wood damages; peeling paint; water infiltration and water damages to building components within the external walls and roof structure; interior mold and mushroom growth; interior water damage to units and common areas; deterioration and damage to the building structures and the interior walls of the

Condominium building; damages to interior wall finishes, trim, furniture, carpeting, and other finished areas; personal property within the homes; and, in some cases, unsafe conditions which present a substantial risk of serious personal injury and property damage." The alleged defects related to work performed by Poole, Plus One and/or ESN.

NVR has clearly pleaded that Poole negligently installed the brick veneer, and that this was a substantial component of the negligence alleged in the initial tort suit brought by the Association. *See, e.g.*, ECF 1-2 at 2, Eden Brook Verdict Sheet. In addition, NVR's allegations of substantial risk of serious personal injury and of damage to personal property within the homes are sufficient to allege non-economic loss. Therefore, NVR has sufficiently alleged, indirectly if not directly, that it and Poole are joint tortfeasors with respect to non-economic loss. In other words, the facts as alleged give rise to that inference.

Nevertheless, Poole argues that, even if there is common liability, contribution is precluded because there is no allegation in NVR's suit that NVR's settlement with the Association discharged Poole's liability. In other words, according to Poole, NVR's contribution claim is precluded because its potential liability to the tort suit plaintiff has not been released. ECF 56 at 2.

Va. Code Ann. § 8.01-35.1(B) (West 2007) states:

> A person who enters into a release or covenant not to sue with a claimant is not entitled to recover by way of contribution from another person whose liability for the injury, property damage or wrongful death is not extinguished by the release or covenant not to sue, nor in respect to any amount paid by the person which is in excess of what was reasonable.

As noted, Maryland law contains a similar provision at C.J. § 3-1402(c). It states: "A joint tort-feasor who enters into a settlement with the injured person is not entitled to recover contribution from another joint tort-feasor whose liability to the injured person is not extinguished by the settlement."

18

As NVR points out, ECF 70 at 6, NVR is not required to plead affirmatively that, as a result of its settlement with the Association, the Association released Poole. Rather, Poole's contention amounts to a defense. And, as noted, in connection with a Rule 12(b)(6) motion, the court ordinarily does not resolve the merits of a defense.

Because Rule 12(b)(6) is intended to test the legal adequacy of the complaint, a court ordinarily should not consider any documents that are outside of the complaint or not expressly incorporated therein. *Clatterbuck*, 708 F.3d at 557; *Richmond*, 4 F.3d at 250. Thus, I am bound to regard as true those facts alleged by NVR in its Amended Complaint. NVR alleges that it "paid an amount to the Condominium Association in satisfaction of the money judgment." ECF 45 ¶ 28. That averment is sufficient at this stage of the litigation to defeat Poole's Motion.

In sum, NVR has successfully pleaded facts alleging that it shares common liability with Poole.

### D. Poole's Motion for a More Definite Statement

Fed. R. Civ. P. 12(e) provides, in relevant part:

A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired.

The Fourth Circuit has stated that Rule 12(e), which governs motions for more definite statement, "must be read in conjunction with Rule 8." *Hodgson v. Va. Baptist Hosp., Inc.*, 482 F.2d 821, 822 (4th Cir. 1973) ("[W]hen the complaint conforms to Rule 8(a) and it is neither so vague nor so ambiguous that the defendant cannot reasonably be required to answer, the district court should deny a motion for a more definite statement.").

Unlike a Rule 12(b)(6) motion, which tests the legal sufficiency of a complaint, a Rule 12(e) motion for more definite statement focuses on whether "'a party has enough information to frame an adequate answer.'" *Streeter v. SSOE Sys.*, No. WMN–09–CV–01022, 2009 WL 3211019, at *10 (D. Md. Sept. 29, 2009) (quoting *Doe v. Bayer Corp.*, 367 F. Supp. 2d 904, 917 (M.D.N.C. 2005)).  Such motions are "'designed to strike at unintelligibility rather than simple want of detail.'"  *Seneca One Fin., Inc. v. Structured Asset Funding, LLC*, No. DKC 10–1704, 2010 WL 4449444, *2 (D. Md. Nov. 4, 2010) (quoting *Frederick v. Koziol*, 727 F. Supp. 1019, 1021 (E.D. Va. 1990) (internal quotation marks omitted)).  But, they "are viewed with disfavor, and are rarely granted."  *Cellars v. Pac. Coast Packaging, Inc.*, 189 F.R.D. 575, 578 (N.D. Ca. 1999).

When the information sought in connection with a Rule 12(e) motion "'is available or properly sought through discovery, the motion should be denied.'"  *Seneca One Fin.*, 2010 WL 4449444, at *2 (quoting *Frederick*, 727 F. Supp. at 1020–21).  In addition, if the court is satisfied that the complaint provides enough information to frame a responsive pleading, "a court should deny the Rule 12(e) motion and avoid delay in maturing the case."  *Bayer Corp.*, 367 F. Supp. 2d at 917 (citing *Hodgson*, 482 F.2d at 824)

Under Fed. R. Civ. P. 12(e), a party may move for a more definite statement if the pleading is "so vague or ambiguous that the party cannot reasonably prepare a response."  This suit is not so "vague or ambiguous" as to lead the Court to conclude that Poole "cannot reasonably prepare a response."  Fed. R. Civ. P. 12(e); ECF 36 at 5.  Indeed, Poole has already filed an Answer to NVR's Complaint.  ECF 39.

Consequently, Poole's Motion for a more Definite Statement will be denied.

## CONCLUSION

For the foregoing reasons, defendant Poole's Motion (ECF 56) will be denied.  An Order follows.

Date:  March 13, 2015                                   /s/_____
                                                        Ellen L. Hollander
                                                        United States District Judge